The Boston Carpet Company v. Journeay.

THE BOSTON CARPET COMPANY *v.* ALBERT JOURNEAY, JR., *and others.*

Where a factor, agent, or broker misconducts himself in the business of his agency, so that his services have not, by reason of his misconduct, negligence, or fraud, been of any benefit to his principal, or have not proved as beneficial as they otherwise would, but for his misconduct, he forfeits his right to commission.

But where a commission merchant in rendering accounts of his sales, returned certain sales as made at a lower rate than appeared on his books,—*Held*, that although the principal might recover the difference between the amount of the sales actually made and those returned, yet, no fraud being proved, he could not recover the commissions already paid, and allowed to the merchant for services actually performed in and about the business.

APPEAL by the defendant from a judgment entered at Special Term on the report of a referee.

In December, 1852, the defendants were jobbers of carpets and other goods in the city of New York, selling mostly to retailers in the Southern and Western States, and in the northern and western counties of this State. Under date of December 10, 1852, an agreement in writing was entered into between one Crawshaw and defendants, by which Crawshaw was to manufacture and ship carpets to defendants for sale on commission, and defendants were to make advances thereon. The only part of this agreement which is material is the 4th clause, in these words:

*Fourth.*—That said firm of A. Journeay, Jr. & Co. shall guaranty all sales of said carpets which they may make, and shall keep all on hand covered by insurance against fire, and in addition to all charges for insurance, storage, drayage, labor, and other customary charges with commission merchants in New York, they shall be entitled, as a full compensation for

The Boston Carpet Company v. Journeay.

their services, to a commission of six per cent. on the amount of *all sales to customers of the first class*, and upon the amount of all sales to customers of the second class an additional and further commission, so that the sales to customers of the second class shall yield and produce to the parties of the first part as much, and no more, per yard, than the sales to customers of the first class, this additional premium being for the additional risk incurred, and for the longer period they may be obliged to wait for the receipt of the proceeds; it being also left to the said firm to determine who are the first and who are the second class of customers.

Under this agreement the business was carried on with Crawshaw and his successors and assignees until September, 1853, the defendants from time to time receiving goods, making advances and rendering accounts sales. The sales were to small dealers, a large proportion of whom resided in distant places.

In rendering the account sales, the defendants, in the case of sales to customers of the second class, returned the sales at the rate of sales to customers of the first class, instead of returning them at the actual rate, and then deducted the excess over the price to customers of the first class.

In 1854, this action was brought, charging, amongst other things, that the defendants had rendered false accounts, and *fraudulently* retained a portion of the price for which the goods were sold, and claiming that they had, for this and other misconduct and fraud, forfeited their commissions.

The defendants denied all misconduct and fraud, and justified the return of the sales to customers of the second class at the prices for which sales were made to customers of the first class under the fourth clause of the agreement.

The case was tried before a referee. The referee found against the defendants upon two of the charges contained in the complaint, to wit, the reclamations for short measure, and the withholding of a portion of the price for which some of the goods were sold. As a penalty for this, he forfeited the defendant's commission.

The defendants appealed to the General Term.

*M. Porter and Wm. M. Evarts* for appellants.

I.   The referee does not find, as a matter of fact, that the defendants were guilty of fraud or of intentional misconduct. His conclusion of law, that defendants did not earn, and were not entitled to commissions, is, therefore, not sustained by his finding of fact.   There is no case where it is held that an agent forfeits his commission, except for fraud or wilful misconduct judicially established.   The referee does not convict defendants of fraud, yet he *punishes* them as if they were guilty.

II.   The cases where agents have been disallowed their compensation on account of neglect or misconduct, were cases where the agent was suing.   We believe there is no case where the principal has been permitted to recover it back when once paid.

*Augustus F. Smith*, for respondents.

It is well established, that the agent who defrauds his principal earns nothing by way of compensation. (Smith's Mer. Law, 155; *Sea* v. *Carpenter*, 16 Ohio, 412; *Thurst* v. *Holding*, 3 Taunt, 31; *Ridgway* v. *Ludlow*, 3 Halst. Ch. R. 123; 1 Parsons on Contracts, 84, and Cases cited; Dunlop's Paley's Agency, 104, note *f*).

BY THE COURT.—HILTON, J.—If the sales made were not all to customers such as are denominated in the agreement between the parties, as "first class," the defendants should have established the fact by proof; not having done so, we must assume, as the referee did, that they were unable to furnish any favorable evidence on the subject.

The same view must be taken in respect to their claim for short measure in the goods consigned.   If there was such a deficiency, the burden of proving the fact was upon them.

But I do not agree with the referee in his conclusion upon the facts found, that the plaintiffs are entitled to recover back the commissions which they have heretofore allowed and paid to the defendants  on the sales made, and which have been actually earned under the agreement.   I can find no precedent for such a recovery, nor am I able to perceive that it rests upon any established legal principle.

The rule undoubtedly is, that where a factor, agent or broker, misconducts himself in the business of his agency, so that his services have not, by reason of his misconduct, negligence, or fraud, been of any benefit to his principal, or have not proved as beneficial as they otherwise would but for his misconduct, he forfeits his right to compensation.

One of the earliest cases upon the subject is *White* v. *Lady Lincoln*, 8 Vesey, 363, where it appeared that the agent kept his accounts so loosely that the principal was unable to ascertain what amount of moneys belonging to him had actually been collected and received by his agent. LORD CHANCELLOR ELDON then said, that the Court must, for the safety of mankind, lay down a rule not to be departed from only upon very special circumstances, that a man standing in the relation of agent, is bound to keep regular accounts of his transactions on behalf of his employer, not only of his payments, as in that case was done, but of his receipts; and unless he did so, he should not be permitted to make a demand for his services in that relation.

This rule not only commends itself, but has frequently been adverted to and applied, so that it is now settled that an agent must not only discharge all the duties of his employment with proper skill and fidelity, but in addition, must keep accounts of his transactions, and of all receipts and payments relating to the business entrusted to him (*Farnsworth* v. *Gerrard;* 3 Camp. 38; *Sea* v. *Carpenter*, 16 Ohio, 412; *Montrion* v. *Jefferys*, 1 Car. & Payne, 113; *White* v. *Chapman*, 1 Starkie, 113; *Lady Ormond* v. *Hutchinson*, 13 Vesey, 53; *Dodge* v. *Tileston*, 12 Pick. 328); and his neglect in this respect, whereby his principal sustains injury, will deprive him of any claim for commissions or compensation. Chitty on Contracts, 548; Paley on Agency, 105; 1 Parsons on Contracts, 84.

But in the present case, upon the facts found by the referee, neither of those rules can be invoked in support of the judgment appealed from. It is not claimed that the defendants did not keep accurate accounts; indeed, on the contrary, the recovery here is based upon the entries in their books, by which it appears that the sales actually made by them of the carpets consigned, were at higher rates than they were returned at in their accounts rendered to the plaintiffs; and to

the extent of this difference the plaintiffs are clearly entitled to judgment as for moneys belonging to them in the hands of the defendants. But they cannot go farther, and recover back as a penalty for rendering those deceptive accounts the commisions which they have heretofore paid and allowed the defendants, for the services they have performed in and about their business.

The judgment should, for these reasons, be reversed, as to the one thousand three hundred and twenty-five dollars and thirty-eight cents, being the amount of the commissions, with interest, and affirmed for the residue, without costs of this appeal to either party.

Ordered accordingly.